UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Sheng-Wen Cheng, | Case No. 23-cv-0737 (NEB/LIB) |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| Clayton Wilcox, et al., | |
| Defendants. | |

This matter comes before the undersigned United States Magistrate Judge pursuant to a general assignment made in accordance with 28 U.S.C. § 636, and on Plaintiff Sheng-Wen Cheng's Complaint, [Docket No. 1], as well as, his Application to Proceed in District Court Without Prepaying Fees or Costs ("IFP Application"). [Docket No. 2].

For the following reasons, the Court recommends dismissing this action and denying the IFP Application as moot.

**I.   Background**

This action commenced on March 27, 2023, when the Court received the Complaint and IFP Application. Plaintiff is currently at the Federal Medical Center in Rochester, Minnesota, but this action concerns events from Plaintiff's earlier incarceration at the Federal Correctional Institution at Sandstone, Minnesota ("FCI Sandstone"). (See Compl. [Docket No. 1] at 2).[1] Plaintiff's Complaint names six Defendants: Clayton Wilcox, Nguyen Lee, Howard Bonifant, "Inmate Miller," "Inmate Chandellor," and Khamsay Xayamontey. (See Compl. [Docket No. 1]). According the allegations in Plaintiff's Complaint, the first five Defendants are currently prisoners

---

[1] Citations to filed materials use the pagination provided by the Court's CM/ECF filing system.

at FCI Sandstone; Xayamontey is the exception, with Plaintiff asserting that Xayamontey currently resides in Seattle, Washington. (Id. at 4–5).

Plaintiff alleges that in November 2022, Xayamontey—then presumably incarcerated at FCI Sandstone—asked Plaintiff for a $6,000 loan. (See Id. at 5). Plaintiff alleges that the other Defendants "vouched for [Xayamontey's] credibility" and promised to pay Plaintiff back "if . . . Xayamontey were to default on the loan." (Id.). Notwithstanding this, Plaintiff claims, Defendants in fact knew that Xayamontey did not plan to repay the loan. (See Id. at 6). Plaintiff asserts that he gave Xayamontey the loan, and Xayamontey then "shared the fund with" the other Defendants. (Id.) Afterwards, Xayamontey denied receiving the money; the other Defendants "also denied responsibility" for the loan. (Id.).

According to the allegations in Plaintiff's Complaint, Defendants "defrauded" him of this $6,000.00 through their operation of a "Islander Car." (See Id. at 1–4). Plaintiff describes "Islander Car" as "an enterprise that has a common purpose of supporting inmate financially and emotionally within" FCI Sandstone "with members," including Defendants, "who function as a continued unit . . . ." (Id. at 2). Plaintiff alleges that Defendants "have acted beyond the original purpose of the 'Islander Car," and [they] have turned it into a criminal enterprise." (Id. at 3).

Plaintiff further alleges that this Court has subject matter jurisdiction here under 28 U.S.C. § 1331 (establishing federal question jurisdiction) and 28 U.S.C. § 1367 (establishing supplement jurisdiction). (See Compl. [Docket No. 1] at 4). Plaintiff purports to bring federal law claims against the Defendants under the Racketeer Influenced and Corrupt Organizations Act, Pub. L. No. 91-452, 84 Stat. 922 (1970) (codified as amended at scattered sections of the U.S. Code) ("RICO Act"). In particular, he asserts claims against all Defendants under 18 U.S.C. § 1962(a)–(d). (See Compl. [Docket No. 1] at 5–9). He also raises various state-law claims: defamation, civil

conspiracy, "civil theft," breach of implied contract, promissory estoppel, unjust enrichment, fraud, aiding and abetting tortious conduct, tortious interference with economic advantage, and intentional infliction of emotional distress. (See Id. at 9–17).

For relief, Plaintiff asks for certain forms of injunctive relief; compensatory relief "of no less than $100,000"; and "punitive relief." (Id. at 18).

**II.   Analysis**

Rather than pay this action's filing fee, Plaintiff submitted an IFP Application. Under the federal statute governing IFP proceedings, "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(ii).

When determining if a complaint states a claim on which a court may grant relief, a district court accepts the complaint's factual allegations as true and draws all reasonable inferences in the plaintiff's favor. See, e.g., Varga v. U.S. Bank Nat. Ass'n, 764 F.3d 833, 836 (8th Cir. 2014) (citing Loftness Specialized Farm Equip., Inc. v. Twiestmeyer, 742 F.3d 845, 854 (8th Cir. 2014)). While a complaint's factual allegations need not be detailed, they must "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citing authorities). A complaint must "'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). A district court's consideration of whether a pleading states a claim is "context-specific"; a court must "draw on its judicial experience and common sense." Id. at 679; see also, e.g., Zink v. Lombardi, 783 F.3d 1089, 1098 (8th Cir. 2015) (en banc) (quoting Magee v. Trs. of Hamline Univ., 747 F.3d 532, 535 (8th Cir. 2014) (cleaned up)).

In considering whether a pro se complaint has plead a claim upon which relief may be granted, the Court must "liberally construe[]" the pro se complaint because "a pro se complaint, however inartfully pleaded, must be held to less stringent standard than formal pleadings drafted by lawyers." Erikson v. Pardus, 551 U.S. 89, 94 (2007); see Sandknop v. Mo. Dep't of Corr., 932 F.3d 739, 741 (8th Cir. 2019). "Although pro se pleading are to be construed liberally, pro se litigants are not excused from failing to comply with substantive and procedural law." Burgs v. Sissel, 745 F.2d 526, 528 (8th Cir. 1984); see Martin v. Aubuchon, 623 F.2d 1282, 1286 (8th Cir. 1980); Sorenson v. Minnesota Dep't of Corr., No. 12-cv-1336 (ADM/AJB), 2012 WL 3143927, at *2 (D. Minn. Aug. 2, 2012). "Though pro se complaints are to be construed liberally, they still must allege sufficient facts to support the claims advanced." Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004) (internal citations omitted).

In addition to § 1915(e)'s requirements, the Court also must consider its own subject matter jurisdiction. Under Federal Rule of Civil Procedure 12(h)(3), "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the [relevant] action."

### A.     RICO claims

As noted above, Plaintiff purports to bring claims against Defendants under the RICO Act—specifically, Counts I through IV assert claims under 18 U.S.C. § 1962(a)–(d), with each count corresponding to a subsection of § 1962. (See Compl. [Docket No. 1] at 5–9). Section 1962 reads as follows:

> (a)     It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of [18 U.S.C. § 2], to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce . . . .

4

> (b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.
>
> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
>
> (d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

18 U.S.C. § 1962(a)–(d).[2]

The civil remedies available for RICO violations are governed by 18 U.S.C. § 1964. Under § 1964(c), "[a]ny person injured in his business or property by reason of a violation of [§ 1962] may sue therefor in any appropriate United States district court." Plaintiff presumably brings his claims under § 1964(c).

The Court will address Cheng's claims under § 1962(a)–(d) in turn.

### 1. Claims under § 1962(a)

As noted above, § 1962(a) "makes it unlawful to invest income derived from a pattern of racketeering activity in an enterprise." RJR Nabisco, Inc., 759 U.S. at 330; see also, e.g., 18 U.S.C. § 1962(a). Considering § 1962(a)'s language as well as § 1964(c)'s "by reason of" language, the

---

[2] The United States Supreme Court has summarized § 1962 as follows:

> RICO's § 1962 sets forth four specific prohibitions aimed at different ways in which a pattern of racketeering activity may be used to infiltrate, control, or operate "a[n] enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." These prohibitions can be summarized as follows. Section 1962(a) makes it unlawful to invest income derived from a pattern of racketeering activity in an enterprise. Section 1962(b) makes it unlawful to acquire or maintain an interest in an enterprise through a pattern of racketeering activity. Section 1962(c) makes it unlawful for a person employed by or associated with an enterprise to conduct the enterprise's affairs through a pattern of racketeering activity. Finally, § 1962(d) makes it unlawful to conspire to violate any of the other three prohibitions.

RJR Nabisco, Inc. v. European Community, 579 U.S. 325, 330 (2016) (alteration in original).

5

United States Court of Appeals for the Eighth Circuit—following numerous other courts of appeals—has held that "RICO gives only individuals who have suffered injury from the use or investment of racketeering income standing to bring a civil suit under §§ 1962(a) . . . ." Fogie v. THORN Americas, Inc., 190 F.3d 889, 895 (8th Cir. 1999); see also, e.g., Murrin v. Fischer, No. 7-cv-1295 (PJS/RLE), 2008 WL 540857, at *13 (D. Minn. Feb. 25, 2008) (citing Fogie). In other words, a § 1962(a) plaintiff must allege "an injury from the use or investment of the racketeering income that is separate and distinct from injuries allegedly caused by the defendant's engaging in the predicate acts." Fogie, 190 F.3d at 896 (8th Cir. 1999); Murrin, 2008 WL 540857, at *13 (quoting Fogie).

The Complaint fails this test. Even liberally construing his Complaint; accepting as true the factual allegations in his Complaint, including his allegations about the ostensibly relevant enterprise—"Islander Car," (see Compl. [Docket No. 1] at 2–3); and drawing all reasonable inferences in his favor, Plaintiff does not allege any injury "in his business or property" arising from any use or investment of the income that Defendants allegedly took from Plaintiff by defaulting on the alleged loan. Plaintiff's injury here is only the loss of the $6,000, and there is no allegation in the Complaint that Defendants used or invested that money to acquire any interest in "Islander Car," or that any such use or investment harmed Plaintiff. The Complaint thus fails to state a § 1962(a) claim. Cf. Livingston v. ITT Consumer Fin. Corp., 795 F. Supp. 921, 925 (D. Minn. 1992) ("A civil RICO plaintiff may recover for a violation of § 1962(a) only if injured 'by reason of' that violation." (citing § 1964(c)).

The Court therefore recommends dismissing Plaintiff's § 1962(a) claims without prejudice for failure to state a claim.

### 2.      Claims under § 1962(b)

Section 1962(b) "makes it unlawful to acquire or maintain an interest in an enterprise through a pattern of racketeering activity." RJR Nabisco, Inc., 759 U.S. at 330; see also, e.g., 18 U.S.C. § 1962(b). Here again, the Court concludes that Plaintiff has failed to state a § 1962(b) claim. The reason why is similar to the problem with Plaintiff's § 1962(a) claim: § 1962(b), combined with the § 1964(c) language, requires that a plaintiff suffer injury from defendants "acquir[ing] or maintain[ing] . . . [an] interest in or control of [some] enterprise." The only enterprise at issue here, again, is Islander Car. However, even liberally construing his Complaint in his favor, the Complaint lacks any factual allegation of any injury to Plaintiff due to Defendants acquiring or maintaining an interest in, or control of, Islander Car.

The Court therefore recommends dismissing Plaintiff's § 1962(b) claims without prejudice for failure to state a claim.

### 3.      Claims under § 1962(c)

Section 1962(c) "makes it unlawful for a person employed by or associated with an enterprise to conduct the enterprise's affairs through a pattern of racketeering activity." RJR Nabisco, Inc., 759 U.S. at 330; see also, e.g., 18 U.S.C. § 1962(c). Unlike Plaintiff's claims under § 1962(a)–(b), here Plaintiff presents a narrative of how Defendants' alleged conduct falls within § 1962(c) and caused Plaintiff's injury. Liberally construing his Complaint in his favor, Plaintiff assertions are that the fraudulently induced loan from Plaintiff is a relevant sort of "racketeering activity," the fraudulent inducement was done by Defendants as part of their "conduct[ing] [Islander Car's] affairs," and the conduct injured Plaintiff.

But this argument fails. Dispositive here is the definition of "racketeering activity." There is a specific—and quite lengthy—statutory list of what acts qualify as such activity:

"[R]acketeering activity" means (A) any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under any of the following provisions of [18 U.S.C. § 201] (relating to bribery), [18 U.S.C. § 224] (relating to sports bribery), [18 U.S.C. §§ 471–73] (relating to counterfeiting), [18 U.S.C. § 659] (relating to theft from interstate shipment) if the act indictable under [18 U.S.C. § 659] is felonious, [18 U.S.C. § 664] (relating to embezzlement from pension and welfare funds), [18 U.S.C. §§ 891–94] (relating to extortionate credit transactions), [18 U.S.C. § 932] (relating to straw purchasing), [18 U.S.C. § 933] (relating to trafficking in firearms), [18 U.S.C. § 1028] (relating to fraud and related activity in connection with identification documents), [18 U.S.C. § 1029] (relating to fraud and related activity in connection with access devices), [18 U.S.C. § 1084] (relating to the transmission of gambling information), [18 U.S.C. § 1341] (relating to mail fraud), [18 U.S.C. § 1343] (relating to wire fraud), [18 U.S.C. § 1344] (relating to financial institution fraud), [18 U.S.C. § 1351] (relating to fraud in foreign labor contracting), [18 U.S.C. § 1425] (relating to the procurement of citizenship or nationalization unlawfully), [18 U.S.C. § 1426] (relating to the reproduction of naturalization or citizenship papers), [18 U.S.C. § 1427] (relating to the sale of naturalization or citizenship papers), [18 U.S.C. §§ 1461–65] (relating to obscene matter), [18 U.S.C. § 1503] (relating to obstruction of justice), [18 U.S.C. § 1510] (relating to obstruction of criminal investigations), [18 U.S.C. § 1511] (relating to the obstruction of State or local law enforcement), [18 U.S.C. § 1512] (relating to tampering with a witness, victim, or an informant), [18 U.S.C. § 1513] (relating to retaliating against a witness, victim, or an informant), [18 U.S.C. § 1542] (relating to false statement in application and use of passport), [18 U.S.C. § 1543] (relating to forgery or false use of passport), [18 U.S.C. § 1544] (relating to misuse of passport), [18 U.S.C. § 1546] (relating to fraud and misuse of visas, permits, and other documents), [18 U.S.C. §§ 1581–92] (relating to peonage, slavery, and trafficking in persons), [18 U.S.C. §§ 1831–32] (relating to economic espionage and theft of trade secrets), [18 U.S.C. § 1951] (relating to interference with commerce, robbery, or extortion), [18 U.S.C. § 1952] (relating to racketeering), [18 U.S.C. § 1953] (relating to interstate transportation of wagering paraphernalia), [18 U.S.C. § 1954] (relating to unlawful welfare fund payments), [18 U.S.C. § 1955] (relating to the prohibition of illegal gambling businesses), [18 U.S.C. § 1956] (relating to the laundering of monetary instruments), [18 U.S.C. § 1957] (relating to engaging in monetary transactions in property derived from specified unlawful activity), [18 U.S.C. § 1958] (relating to use of interstate commerce facilities in the commission of murder-for-hire), [18 U.S.C. § 1960] (relating to illegal money transmitters), [18 U.S.C. §§ 2251, 2251A, 2252, 2260] (relating to sexual exploitation of children), [18 U.S.C. §§ 2312–13] (relating to interstate transportation of stolen motor vehicles), [18 U.S.C. §§ 2314–15] (relating to interstate transportation of stolen property), [18 U.S.C. § 2318] (relating to trafficking in counterfeit labels for phonorecords, computer programs or computer program documentation or packaging and copies of motion pictures or

other audiovisual works), [18 U.S.C. § 2319] (relating to criminal infringement of a copyright), [18 U.S.C. § 2319A] (relating to unauthorized fixation of and trafficking in sound recordings and music videos of live musical performances), [18 U.S.C. § 2320] (relating to trafficking in goods or services bearing counterfeit marks), [18 U.S.C. § 2321] (relating to trafficking in certain motor vehicles or motor vehicle parts), [18 U.S.C. §§ 2341–46] (relating to trafficking in contraband cigarettes), [18 U.S.C. §§ 2421–24] (relating to white slave traffic), [18 U.S.C. § 175–78] (relating to biological weapons), [18 U.S.C. §§ 229–229F] (relating to chemical weapons), [18 U.S.C. § 831] (relating to nuclear materials)[;] (C) any act which is indictable under [29 U.S.C. § 186] (dealing with restrictions on payments and loans to labor organizations) or [29 U.S.C. § 501(c)] (relating to embezzlement from union funds)[;] (D) any offense involving fraud connected with a case under title 11 (except a case under [11 U.S.C. § 157]), fraud in the sale of securities, or the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), punishable under any law of the United States[;] (E) any act which is indictable under the Currency and Foreign Transactions Reporting Act[;] (F) any act which is indictable under the Immigration and Nationality Act, section 274 (relating to bringing in and harboring certain aliens), section 277 (relating to aiding or assisting certain aliens to enter the United States), or section 278 (relating to importation of alien for immoral purpose) if the act indictable under such section of such Act was committed for the purpose of financial gain[;] or (G) any act that is indictable under any provision listed in [18 U.S.C. § 2332b(g)(5)(B)].

18 U.S.C. § 1961(1); see also, e.g., Beck v. Prupis, 529 U.S. 494, 497 n.2 (2000) (noting that § 1961(1)'s list is "exhaustive").

Even liberally construing his Complaint in his favor, accepting as true all factual allegations therein, and drawing all reasonable inferences thereon in his favor, Plaintiff's Complaint lacks any basis upon which this Court could reasonably conclude that Plaintiff's allegations surrounding the $6,000 loan fall within any category on this list. The only parts of the § 1961(1) list that appear relevant are those portions of subsection (B) that refer to 18 U.S.C. §§ 891–94, 1341, 1343, 1957, and 1960. But once one reads those statutes, one sees that none cover Plaintiff's allegations about the loan. More specifically, nothing in the loan-related allegations suggests that the loan qualifies as an "extortionate extension of credit," that securing the loan involved communications by mail or by phone, that the loan constitutes a "monetary transaction

9

in criminally derived property," or that it related to any sort of "unlicensed money transmitting business." The loan's circumstances, then, do not constitute "racketeering activity."

To be sure, Plaintiff makes numerous generic allegations that "Islander Car" itself engages in various "racketeering activities"—specifically, "coercion, extortion, collecting debts with unlawful means, wire fraud, fraud with related activity in connection with identification documents, smuggling contraband into prison, dealing controlled substances, laundering and investing illegal gains, tax evasion, and retaliating against a witness, victim, or an informant." (Compl. [Docket No. 1] at 2; see Id. at 3). Furthermore, Plaintiff specifically alleges in his § 1962(c) allegations that Defendants threatened him in various ways.

As a threshold point, however, many of these assertions are simply boilerplate assertions of criminal conduct. In other words, these assertions are just the sort of legal conclusions masquerading as factual assertions that a district court need not credit. See, e.g., Iqbal, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (citing Twombly, 550 U.S. at 555); Warmington v. Bd. of Regents of Univ. of Minn., 998 F.3d 789, 796 (8th Cir. 2021) (making same point (quoting Iqbal)).

Moreover, even putting aside the fact that many of Plaintiff's assertions are legal conclusions rather than factual assertions, there are still yet other issue fatal to his claim. For example, a civil RICO claim under § 1962(c) requires that the alleged conduct caused the plaintiff "concrete financial loss," Gomez v. Wells Fargo Bank, N.A., 676 F.3d 655, 660 (8th Cir. 2012); see also, e.g., Hunter v. Mayo Clinic, No. 21-cv-742 (ECT/HB), 2021 WL 1877638, at *3 (D. Minn. Apr. 16, 2021) (quoting Gomez), report and recommendation adopted, 2021 WL 1873430

10

(D. Minn. May 10, 2021), and Plaintiff fails to allege any such loss. The only allegations in the Complaint which link any of Defendants' conduct to a financial loss by Plaintiff are the loan-related allegations, but as discussed above, Plaintiff's loan-related allegations fail to allege any proper form of "racketeering activity." Although Plaintiff's other allegations may well give rise to other causes of action, they do not ground a RICO claim because they do not allege any concrete financial loss.

The Court therefore recommends dismissing Plaintiff's § 1962(c) claims without prejudice for failure to state a claim.

### 4. Claims under § 1962(d)

The Complaint's only remaining RICO claims are under 18 U.S.C. § 1962(d), which prohibits "conspir[ing] to violate any of the other three prohibitions"—i.e., § 1962(a)–(c). Numerous courts in this District have concluded that where a plaintiff has no cause of action under § 1962(a)–(c), it follows that he or she can have no cause of action under § 1962(d). See, e.g., In re UnitedHealth Grp. PBM Litig., No. 16-cv-3352 (JNE/BRT), 2017 WL 6512222, at *13 (D. Minn. Dec. 19, 2017) (citing Jaworski v. Rollupspacovers, Roll-it Spa Covers, Creative Innovations LLC, No. 11-cv-1816 (DSD/JSM), 2012 WL 1130684, at *3 (D. Minn. Apr. 3, 2012)); Murrin, 2008 WL 540857, at *17 (D. Minn. Feb. 25, 2008) (citing cases).

The Court has already concluded above that Plaintiff has no causes of action under 18 U.S.C. § 1962(a)–(c). The Court need not repeat its analysis here. It is sufficient to state that even liberally construing his Complaint in his favor, accepting as true all factual allegations therein, and drawing all reasonable inference thereon in his favor, Plaintiff has failed to state a §§ 1962(a), 1962(b), or 1962(c) claim upon which relief may be granted. It follows that he has no causes of action under § 1962(d).

The Court therefore recommends dismissing Plaintiff's § 1962(d) claims without prejudice for failure to state a claim.

### B. Supplemental jurisdiction

The Court's above recommendations recommends the dismissal of all of Plaintiff's RICO claims. All that remains for this Court's consideration are Plaintiff's state-law claims. This leads to a supplemental-jurisdiction question. Under 28 U.S.C. § 1367(a), "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ."

Section 1367(c), however, states that a district court "may decline to exercise supplemental jurisdiction over a claim under [§ 1367(a)] if," as relevant here, "the district court has dismissed all claims over which it has original jurisdiction." Moreover, the Eighth Circuit has stated that "when a district court has dismissed every federal claim," as this Court recommends doing here, "'judicial economy, convenience, fairness, and comity' will usually point toward declining to exercise jurisdiction over the remaining state-law claims." McManemy v. Tierney, 970 F.3d 1034, 1041 (8th Cir. 2020) (quoting Wilson v. Miller, 821 F.3d 963, 970–71 (8th Cir. 2016)). The Court sees no reason to depart from McManemy's guidance here.

Thus, the Court recommends declining to exercise supplemental jurisdiction over Plaintiff's state-law claims.

### C. IFP Application

The discussion above recommends the Complaint's dismissal in its entirety. Given this outcome, the Court further recommends denying the IFP Application as moot.

### III. RECOMMENDATION

Based on the foregoing, and on the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. Plaintiff's RICO claims be **DISMISSED without prejudice** under 28 U.S.C. § 1915(e) for failure to state a claim;

2. The Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims;

3. Plaintiff's Application to Proceed in District Court Without Prepaying Fees or Costs, [Docket No. 2], be **DENIED** as moot; and

4. The above captioned matter be dismissed without prejudice in its entirety.

Dated: June 8, 2023                                s/Leo I. Brisbois
                                                   Hon. Leo I. Brisbois
                                                   United States Magistrate Judge

### NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. See Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).